It looks to me like you are thoroughly enjoying yourself this morning. Yes, Your Honor. I love oral argument, whether it's mine or someone else's. Well, let me give you a suggestion about your oral argument. The issue is purely whether the district court followed the instructions in the mandate. Yes, Your Honor. We just had a case called U.S. v. Paul in which the whole issue was did the district court follow the mandate. It caused a lot of controversy on this Court. So let's try to concentrate on whether the mandate was followed. Yes, Your Honor. The prior procuring decision provided a detailed roadmap for the district court. It laid out a series of questions for the district court to answer. And it was, you know, listed in order. And as the court is probably clearly aware from reviewing the record in this case, the district court did not answer the questions that the decision laid out. Question number one being the precise scope of Mr. Zimmerman's beliefs. Number two, whether, A, the belief that was discussed in the prior decision, the belief that the blood extraction would violate his religious exercise, whether that belief was sincere. The district court's statement regarding sincerity was unfortunately somewhat ambiguous and not precise. Well, didn't the district court, I mean, the prior panel said that this was, his position against blood sampling with DNA was a religious belief. And then the district court said it wasn't. Or maybe she said it wasn't sincere. You're right, there was an ambiguity. So she did not, you know, the original decision in this case actually was fairly, I mean, it's a fairly detailed mandate. Of what the district court is to do. And so rather than say, well, it's time to answer these five questions, here are the answers. Instead, she sort of has this one sentence that touches on. She finds it was sincere. But she says she doesn't believe that his religious beliefs include an objection to the testing of his DNA. Correct, which is the part B, not the part A, which is regard to the blood extraction. At my last oral argument in this case, you know, I was asked that question by the panel, which is clearly he objects to having his blood drawn. Does he object to having an alternative method? And I explained that based on the record that we had at that time, that that was at least worth discussing. That his objection to blood was that that would be a sin. And that was just abundantly clear. That his objection that it would offend, I think that was how the declaration ran, that it would offend his religious beliefs to have any type of sampling done for the purposes of DNA testing. That was, you know, sort of on a lesser level. And that it was worth discussing whether that would be one way to avoid the blood test problem. And so it was remanded with a very specific instruction. Now his position is he's against any form of DNA testing whatsoever. Yes. And so that was developed on remand. And so if the court had done what was explained, we would know the answer now to that question. We would have said since his religious beliefs are sincere, although she did not say which religious beliefs were sincere, since this court previously said that his belief about having his blood extracted was a religious belief that would be substantially burdened, the only missing piece was the sincerity. We now have the sincerity. We can't draw blood. The question is, can his DNA be taken by other means? And then she had to get to the question of, are his beliefs about the DNA extraction in any manner, are those religious beliefs? And there's no clear finding on this record with regard to that question. Well, then, if they are beliefs sincerely held, you're very – you accurately said extraction. Then the next question is, are those means of obtaining DNA the least restrictive means of furthering a compelling government interest? Exactly right. Now, there are also other ways of obtaining DNA that are not abstraction. Is there anything in the record of whether those means would offend his religious beliefs? There is discussion in the record in terms of his testimony, not in terms of the declaration, I don't think, but in terms of his testimony, yes. They went into great – the testimony goes into great detail about how taking the hair – this is different than Hammerling, the other circuit case that is sort of touched on this issue, that actually taking the hair rather than testing it was the problem if the purpose of taking the hair was later to do DNA testing. And that is the intelligent design discussion that appears in the testimony. But that is less intrusive than cutting his hair. And had the court reached that issue, that would be harder for me to defend on this appeal. The problem is the court never reached that issue, so I see no choice but for this and to tell the court that she actually has to engage in the test and in the questions that the prior panel asked her to engage in because we don't know what the least restrictive means is yet because we don't have an answer to the questions. You know, one of the unintended consequences of this case, your client was put on probation, no times of incarceration at all, right? Correct. Well, if the least intrusive means is to get residue of DNA left behind, why wouldn't the government have an incentive to jail him for a day or two and then get the DNA from his cell? I mean, do you see what I'm saying? No, absolutely, Your Honor. But it could end up with him spending time in jail unnecessarily. Correct, Your Honor. Because his religious belief doesn't allow him to cut his hair, doesn't allow the government to cut his hair. And that certainly could be an unintended consequence for people similarly situated. I do think, though, that we haven't even gotten to that level until we know whether the belief that he has about having any skin cells, semen, hair follicle, any of that removed or even, you know, they never really talk. I mean, the judge did sort of play around the issue of what if you take one of the hairs that he's left on the chair. I mean, she didn't really develop that, but that could possibly be the least restrictive means if there's a compelling governmental interest. I mean, the district court did not reach either of the two burdens that the government has in this case. She only looked at the three burdens that the defendant has. So although she was asked to on remand reach those two government burdens, the compelling governmental interest and the least restrictive means, she never reached those two issues. So we aren't even to least restrictive means yet. I mean, I'll be surprised if we don't get to that, but we aren't even there yet. Okay. Do you know whether Judge Cooper has retired yet? March, Your Honor. We have until March. If we can get it back to her before March, she will be the one. Maybe you don't want it back to her. Well, you could do worse. I would be happy to go back to Judge Cooper on a further remand of this matter, but that's up to the court. Okay. I'll save the balance of my time. Thank you. Maybe this is what drove her to retire. Good morning, Your Honors. Benjamin Baron from the United States. I just want to begin just by addressing something you said, Judge Wardlaw. I don't believe that the district court in this case did make a blanket sincerity finding. I believe it was a partial sincerity finding. How can you tell? It's in the language that the district court used. It does appear to the court that Mr. Zimmerman has some closely and sincerely held religious beliefs, but I don't believe those religious beliefs, that is, those beliefs that he sincerely holds include an objection to giving up DNA. I don't believe that's part of it. I don't know which are the some which she thinks are sincere. Well, the district court then continues on and addresses the fact that he does give bodily fluids and bodily substances or he's demonstrated a willingness to do so on a day-to-day basis. And based on that finding, the district court concludes that his religious beliefs do not include an objection to giving up DNA. That's explicitly from the text of the district court's oral order. And I believe that that is the fact that this was a sincerity finding and not a legal finding as to whether the defendant... But did she get too substantially burdened? The district court didn't need to get to that point. Once the district court concluded that the defendant did not have a sincerely held religious objection, there's no need to proceed. And that's actually in the 2007 decision. But she has it to blood, right? Right. I mean, the law of the case is that he has a religious belief as to the DNA contained in his blood, right? The law of the case is that taking his statements as true, that is religious. But does he sincerely believe those religious objections is what the 2007 decision by this court left open to the district court. And in the 2007 decision, this court explicitly states that the district court need not proceed to the burden and the compelling interest analysis once it finds that he does not have a sincerely held belief. In fact, in the 2007 decision, this court stated that it had reservations as to whether his beliefs are sincerely held in the first place. The district court's finding that his belief was not sincerely held was in compliance with mandate for that reason. And I would also point the court's attention to the case of United States v. This Court held that even though that violated the explicit, clear terms of the mandate, it didn't violate the spirit of the mandate because it didn't simply re-enter another order of acquittal. And I think that case is controlling here because even though this Court did lay out   another order of acquittal. I'm looking back at the order and you misquoted it. It must have had the wrong order. It stated July 2nd, 2008. Your Honor, I'm looking at excerpts of records 59-60. 65? 55 is the written order, 59-60 is the oral order.   It's a mistake.    I'm not going to believe it. We're reviewing. I think they both shed light on what the district court found. There's an order. This is the order. It's written down. We don't look it back to the transcript to see the stray words. That's why judges write down their orders, because that's what we look at to see exactly what they held. I believe that written order also supports the fact that this was. You misquoted the written order. I apologize. There's no word some, and it doesn't talk about the blood at all or the other bodily fluids. There's nothing like that in this order. The written order states that the defendant has some religious beliefs. Although defendant, and it's a short sentence, although defendant does have sincerely held religious beliefs, the court does not believe that those religious beliefs include an objection to the testing of his DNA. So I'm not sure we really know what sincerely held religious beliefs she found, yet we know he has a religious belief as to blood. So does she, where does she, she doesn't explain anything about why she thinks that it's sincerely that his religious belief that you can't blood test his DNA isn't sincere. I don't understand where you're getting all this from this order. I apologize, Your Honor. All this, I mean, you're making a lot of arguments. I mean, my problem with this case, you know, I knew Tara was on the prior panel, but I read the prior panel's decision, and I don't see that she followed the mandate. And your argument is she did because all of these findings are incorporated into this ruling. She seems to have equated blood with everything else, although the prior panel did say he had a religious belief relating to blood. Well, the prior panel held that, again, there are two steps that apply relevant to this under RFRA analysis. First, the defendant proffers certain beliefs, and the first question is, are those beliefs taken as true religious? And that's what this Court addressed in the 2007 decision. But then there's a follow-up question, which is fine, these beliefs that he's told us are religious, they're taken as true, but does he really believe them? And the moment the district court found that he doesn't sincerely hold a religious objection to giving DNA, his RFRA claim failed on that ground alone, and there was no need to proceed to any further analysis. And there's no law that suggests that a district court must go through every single step of the RFRA analysis where it can dispose of the issue on one question alone. And I don't believe that this Court's mandate in the 2007 decision can reasonably be read to have required the district court to go through each step of the analysis, unlike any other RFRA case where the district court need not do so. I also believe that the spirit of this Court's mandate, and again, under Kellington and the Puritarian decision in United States v. Hall, what's controlling is the spirit of the mandate. The spirit of the mandate was simply to correct the district court's prior legal error and to send it back to reassess the RFRA claim. That's almost a verbatim quote that we remand for the district court to reconsider Zimmerman's RFRA claim. That's exactly what the district court did. So I don't believe based on that basis that the district court violated either the spirit or the expression. Kennedy. She has to be the spirit, comply with the spirit of a decision that says repeatedly that his refusal to give a blood sample was based on religion. Your Honor, I would point to the paragraph immediately following the paragraph you're looking at. In that paragraph. I'm looking at several paragraphs. So. Do you mean of the district court? Of this Court's 2007 opinion. In this Court's 2007 opinion, this is the first full paragraph of 854 addressing the legal question of whether his beliefs, if taken as true, are religious. And then immediately, I apologize, the second full paragraph, and then immediately following that, this Court notes that the district court will need to determine whether Zimmerman's religious beliefs are sincerely held, which is a question of fact. That is what the district court did in this case. Every argument made at that time. The second paragraph you talked about distinguishes between blood and other forms of other methods of getting DNA. He says his belief he can't give a blood sample is religious. However, if his beliefs are broader and would also prevent him from giving any other sample, then the district court will have to determine whether these additional beliefs are also religiously based. Yes, Your Honor. But the moment that the district court – I don't believe that this Court – All right. Then it says they've got to determine whether it's sincere. Yes, Your Honor. All right. And that is a question of fact. And what the district court said is he's come closely and sincerely held religious beliefs. And I don't believe those were – You're supposed to say he has some closely and sincerely held beliefs.  That is sincerity binding. No, no, no. It says – that's the ambiguity in this order. It says that his religious beliefs do not include an objection to the testing of his DNA, yet the prior panel held that his religious objection is to the DNA testing of blood. The prior panel held that he – that his statements taken as true are religious, but that doesn't necessarily mean that he sincerely believes in those religious bases that he's proffered. That's the important distinction that needs to be made here. That's the ambiguity, because we don't know whether she's saying that he doesn't have a sincere belief – a sincere objection to the DNA testing of blood based on religion or whether his religious belief – it doesn't include an objection to the taking of DNA. Your Honor, I believe that if you look at Excerpt 22, the district court explicitly says that I think the only question before the court is whether the beliefs are sincerely held. In Excerpt 33, the district court says sincerity is also a decision I have to make. Excerpt 50, the defense said I think what's at issue here is are his beliefs credible. Well, she wanted us to look at the whole argument, you know. We've been district court judges. We've listened to all these arguments. A lot of people say a lot of different things, but then it's reduced to an order. But this order needs to be taken in context. Well, maybe you should admit to clarify this order. I don't believe – I mean, I agree with you that it is not artfully worded, but I think that taking this statement in context is clear that this is a sincerity finding. I would also point to the grounds that the district court gave at the hearing, namely that he has exhibited an interest or a willingness to give blood. That doesn't cut to the legal question of whether his beliefs are religious. That cuts to whether he does sincerely believe that he can't give blood. The fact that he, as a matter of fact, demonstrates a willingness to, it simply wouldn't make sense to say that in the district court's oral order at the end of the hearing unless the district court was making the sincerity finding. If it were clear, we wouldn't have to spend all this time on it, would we? Anyway, let me just ask you one other question. Is it the policy of the FBI still that the only form of DNA sampling is through sort of less restrictive forms? Yes, Your Honor. I'll answer that directly, and then I'd like to straddle it on a little bit with Your Honor's permission. The answer is at the time of this hearing, blood was the only fluid that was taken by the FBI. Now they've broadened it. I don't know to what extent. Now I think they will take a saliva sample. However, I would note that that is not really relevant here because at Excerpt 33 and 34, for example, the defendant said that he would object to giving even a cheek swab for the purpose of a DNA sample. Well, I know he said that. He said that now at the hearing. And maybe the finding would be a cheek swab isn't a substantial burden. Well, the substantial burden test only applies if there's sincere belief. It's really hard to say what's a sincere religious belief or not. I mean, I've had that in other contexts, legal contexts. And pretty much people sincerely hold beliefs that they connect with God and worship which many of us would find very strange. But they're still very sincerely held religious beliefs. That should be the easiest part of the test to me. The harder part would be like the, you know, the issues around substantial burden, I would think. Easy or difficult. It's still a question of facts. You still have to find it. I mean, it's really hard to say that. I mean, there's a lot of things in a lot of religions that I wouldn't agree with. But I can't, I wouldn't be able to find as a matter of fact that someone else didn't sincerely believe those things as part of their culture of worship. The district court in this case viewed his testimony, saw him make his statements and concluded that as a matter of fact he didn't sincerely believe it. And that was a proper finding. And I would submit not clear error. I have many arguments as to clear error that I wanted to make. I see I'm already over my time. And what does the order mean? Your Honor, my reading of the order, and I really take into context I think the only reasonable reading of the order is that, yes, he has some beliefs. Everyone in his religious beliefs is not insincere. But he has created this religious objection to DNA sample because he does not want to give one and he does not sincerely believe in the religious grounds he's given to not giving a DNA sample. So as to the only issue before the district court, whether he can or cannot give a DNA sample under RFRA, the answer is he does not really believe in the grounds that he's putting forth to the court. And I think that's the proper construction of the district court's order. You're looking at the minute order. I'm looking at – I think the district court's order is encapsulated in both the minute order and the oral order. But looking at the minute order itself, that is a partial credibility finding. He has some religious beliefs. Some of the religious beliefs he's put forward are sincere, but not when it comes to a DNA sample. That is what the district court says. Did you volunteer or suggest that your office would submit a proposed order? A proposed order was not requested by the court. Well, you didn't submit one anyway. We could have submitted one. But in the fact that we could have submitted one doesn't change the fact that – Did you object to this minute order? There was no objection to the order, Your Honor. The minute order is something the clerk does. And I don't know that the clerk passes, you know, by the judge for approval or whatever. They just – they take their notes and they do a good job. Type it up. I would think that in a matter like this, it might have been a good idea to submit a draft of a minute order. Your Honor. And have an order for the court to sign. In my experience, Your Honor, proposed orders are given only when it concerns a more routine legal matter such as findings of excludable time. Here we're talking about a finding of fact that is within the district court's role as a fact finder to enter. I don't think this is the type of case where the government traditionally or in my experience ever submits a proposed order. So while theoretically it's possible, it would be highly unusual. The district court, all the district court needed to do under this Court's mandate, under the standard that applies in every RFRA case, was make a sincerity finding. And once it made that finding that he was not sincere, it properly could have denied his RFRA claim, and that's what happened here. It didn't need to proceed to any further step of analysis. I do have one additional point I wanted to make as a clear error. I'm well over time, but if Your Honors would allow me. I just wanted to point out that the defendant proffered three independent religious objections to giving a DNA sample in this case. First, he said that any extraction of blood would violate his views. That's in Excerpts 26 to 27. Second, he said that an extraction of fluids would violate his beliefs when it's a forced extraction. There's the example of the dental cleaning for that. And then he said that giving a fluid would violate his beliefs only because it's giving a DNA sample. And you'll see that in Excerpt 33 to 34, talking about a cheek swab. Well, those views are inherently in tension with each other. The defendant said he wouldn't get a tattoo today again if he had the choice. But, of course, he said just before that that he would be okay with a consensual taking. And the defendant said he doesn't give blood to a medical examination. But, again, that is a consensual taking. So his views regarding, as put forth in the example of a tattoo, a medical exam, and a dental cleaning, are inherently in tension and, indeed, inconsistent with each other. And that basis alone allowed the district court to find that he was not credible in putting forth his religious opinion. Kennedy. Well, did he offer those as alternative findings? If the judge accepts A, fine. If the judge won't, then the judge could accept B. And if the judge says, no, I don't believe that, then could the judge accept C? Aren't they alternatives? My point is that there are three views that he claims to have which are in tension with each other. If he really believes that a consensual taking of blood is permissible. But what he's saying is, you know, this is what I believe. If you don't believe me, then you can at least find this. And if you don't believe that, at a minimum, you should find this. Well, I think that that in itself, even if what Your Honor is saying is true, that would support the district court's credibility finding, that he's simply throwing out any religious objection he can to give you a DNA sample, even if on their face they're in tension with each other, and even if he can't reconcile them in the specific examples that were brought before him on cross-examination. I mean, if he really doesn't believe that a non-consensual – if he believes that a consensual taking of blood is permissible, there's no reason that he couldn't get a tattoo today again, and that he couldn't give blood a medical exam. But he said that he refused to do that. And that is inconsistent. And that supports the district court's finding. Why was – why did the government want to take DNA samples? Your Honor, it is not at the government's discretion or at the court's discretion. It's mandated under the Justice for All Act that in any case where a defendant is convicted of a felony, a DNA sample must be taken. And that is – I don't know the exact citation off the top of my head, but that is congressional mandate. It's called the Justice for All Act. That is what it is called, Your Honor. Yes. It's even better than the Patriot Act. Whatever it's called, it's the law of the land, and it's what the district court was following. And what was he convicted of? He was convicted of possessing tools that are used to make fraudulent documents. He was found in possession of false identification that was in other people's names in addition to those tools. And I believe that that conviction alone for fraud and for possessing false identification frames the district court's findings in this case. And he was given probation for that? It's not my choice, Your Honor, but it was the sentence that he received. Yes. Oh, so he got probation, straight probation. But he's in custody now. He's not in custody now, to my knowledge. Where is he now? I don't know where he resides. I mean, I believe that he is in supervision in the District of Oregon in Portland, although I can't say for certain the district or the defense attorney probably would answer that. He was on probation in Oregon, you said? I believe that his order of probation is out of here, but he's being supervised by a probation office in Oregon is my understanding. And I apologize if I'm wrong on that. But I guess I've gone well over my time. I think my points are clear. Thank you, Your Honor. That's all right. The first thing the district court was supposed to do was to determine the scope of his religious beliefs. And on that basis alone, I think a remand is necessary. The court has addressed all the other reasons, and I don't need to go over them. But there was a preliminary question. No. What the court really said was that I don't believe that the religious beliefs include an objection to giving up DNA. To DNA. To the testing of his DNA. Well, it said to giving up DNA. Okay. I don't believe that's part of what he sincerely religiously believes. And then she says that he would give up all his fluids, blood, saliva, all of that, for a number of other reasons, but not for DNA. And she says he does object to that, but it's privacy rather than religion. So she did really say that it's not a religious belief that prevents him from giving up blood or other materials for the purposes of having his DNA determined, because he would give up the blood and other samples for other purposes.  And as to that, Your Honor, we actually have a separate argument in the brief that based on the evidence she had, that was clear error, because she was asked those very specific questions. And he had refused medical testing that required a blood draw. And the tattoo was from when he was 18. I mean, if we are going to get into that level of the discussion, I guess I do have to get into the fact that if that is how the order is interpreted, that she is going back and refinding that he somehow does not have this belief that he can't have his blood extracted. Her finding on that, if that's the finding she made, was clear error. Isn't that what we said, that blood is a religious belief? Yes. My question is, does he sincerely have a religious belief that prevents the use of his blood? Yes. I mean, isn't her finding that he does not have a sincere religious belief that prevents the use of blood or anything else for DNA purposes, that's only a belief in his privacy? I mean, I think actually the, you know, the attorney actually sort of correctly identified that there are three separate things that have been said. And the judge needed to articulate the scope of each one of those three and say whether or not, at least as to the second two, they were religious. This Court had already found the first one was religious. Now, this Court said it was a religious belief. Yes. But was that a sincerely held belief? Right. So as to the extraction of blood, independent of DNA entirely, without any discussion of DNA, as to the extraction of blood, was that sincerely? I mean, it was religious, it was belief, but was it a sincere belief? And then the Court said, we now need to look, because he says all these other things, he says these other things about other ways of us getting his DNA, now the district court's going to need to look at the scope. Is the scope broader? Is the scope broader than blood? Because it sounds like it might be. And once we've looked at the scope being broader than blood, is that broader question religious and sincere, and is it substantially burdened? And so how do you... Well, if she decides the answer to the first question, that his objection to the taking of his blood and anything else for purpose of DNA is not a sincerely held religious belief... That was question three. Three, I think. So, I mean, the order says, although defendant does have sincerely held religious beliefs, and then she goes on to discuss only one small piece of the argument. And so we're left in a situation where she's never said anything is not sincere. There's nothing in the record where she says his beliefs are not sincere, merely that they're not. Right. She doesn't say they're not sincere. She says they're not religious. Right. And so in some ways we're back where we were the first time we came up to this Court. And I just don't see how a remand to clarify the scope is avoidable. Well, she says I don't believe those religious beliefs include an objection to giving up DNA. Objection to the testing of his DNA in the written order. Giving up DNA is what she says. I don't believe that's part of what he sincerely religiously believes. And then she goes on to explain that that's a belief in the right to privacy. Right. In the written order she says that objection is one founded on, instead of religion, founded on his sense of his right to privacy, which is not protected by the First Amendment. I mean, she doesn't actually even reference RFRA. But the other thing is that, you know, and this is in the brief, right, you can have dual beliefs. You can have a belief that it violates your right to privacy and that it violates your religious exercise. And so unless she found that it was solely based on a right to privacy, this is not a sufficient finding. So the real problem with this order is that if this order goes to the probation office, they will draw blood. I mean, that's the real problem with this order. And that's the one thing we know this shouldn't be doing. Unless she made a finding of non-sincerity. No, we don't know that. We don't know that because she included blood in everything else. She says that I don't believe those religious beliefs include an objection to giving up DNA. I don't believe that's a part of what he sincerely religiously believes. That he would and does part with those fluids, including blood, under some circumstances. Do it by allowing the drawing of blood for medical testimony, for example. And then he goes on to include blood in there as well with everything else. Now, whether you read the order that way or whether you think there's an error of fact, those are two questions. I don't think it's an unreasonable reading of the order. It may not be the correct one. But she said what he objects to is the exposure of his DNA to the inspection of others. And that's not a religious belief, she says. But that is not. I mean, and that is just factually incorrect in terms of the record. I mean, there. Okay. Well, that's another argument. And that is another argument. If we do get to that sort of more subtle reading or more tortured reading, whichever way you're looking at it, there is the argument that he testified clearly and twice in response to exactly those two questions. I wouldn't do it now. And Callahan clearly says your religious belief doesn't have to be the one you had when you were one year old and you've kept consistently until you're 30 that your religious beliefs are allowed to evolve. So the fact that he got a tattoo when he was 18 or had blood drawn at a young age, if he wouldn't do it now, which is what he testified to, he'd have to think seriously about it. But he had declined to have blood drawn recently based on his religious beliefs, then I think we do have clear error factually if we get to that level of analysis. So I would urge the Court to remand for proceedings consistent with the mandate of the prior per curiam decision. Thank you. Thank you.
judges: Pregerson, Reinhardt, Wardlaw